AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

| | |
|---|---|
| United States of America<br>v.<br><br>GIOVANNI TERRANCE BONDURANT<br><br>*Defendant(s)* | )<br>)<br>) Case No.  3:20-mj-00160<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 22, 2020__ in the county of __Multnomah__ in the _____ District of __Oregon__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(a)(1) | Felony Assault on a Federal Officer |

This criminal complaint is based on these facts:

See attached Affidavit of Federal Protective Services Special Agent Frank Pelligrini.

☑ Continued on the attached sheet.

/s/ Signed IAW Fed. R. Crim. P. 4.1
*Complainant's signature*

SA Frank Pelligrini, Federal Protective Services
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at _10:51_ a.m./p.m.

Date: July 22, 2020

*Judge's signature*

City and state: Portland, Oregon

Hon. John V. Acosta
*Printed name and title*

| | | |
|---|---|---|
| DISTRICT OF OREGON | ) | |
| | ) ss: | AFFIDAVIT OF SPECIAL AGENT |
| County of Multnomah | ) | FRANK PELLEGRINI |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Frank Pellegrini, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I, Frank A. Pellegrini have been a criminal investigator (Special Agent) with the Federal Protective Service (FPS) since September of 2017. I am currently assigned to the Sacramento California area of responsibly, investigating violations of federal law in the Eastern District of California. I am a sworn federal law enforcement officer and have authority to investigate federal offenses pursuant to Title 18 of the United States Code. I am certified to work as a criminal investigator with FPS after completing the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program in Glynco Georgia. I am also certified to work as a part time Investigator for FPS' Office of Internal Investigations (OII) after completing the FLETC based FPS OII Basic Training Program. I was a uniformed police officer (Inspector) with FPS from February of 2009 to September of 2017. I was certified to work as an Inspector with FPS after completing FLETC's Uniformed Police Training Program in Glynco, Georgia. During my assignment as an Inspector, I was also employed as a K9 officer with FPS from 2011 to 2017.

2. I submit this affidavit in support of an information for Giovanni Terrance BONDURANT. As set forth below, there is probable cause to believe, and I do believe, that BONDURANT committed the following offenses: Assault in violation of 18 U.S.

Code § 111 (a)(1) when he tackled a Uniformed Federal Law Enforcement Officer attempting to affect an arrest in the course of his official duties.

3. The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4. 18 U.S.C. § 111 makes it an offense to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of official duties. Under § 111(a), simple assault is a misdemeanor; an assault involving physical contact with a victim or an intent to commit another felony is a felony. Persons designated in § 1114 include any officer or employee of the United States or of any other agency in any branch of the United States government while such officer or employee is engaged in or on account of the performance of official duties, and any person assisting such an officer or employee in the performance of official duties.

## Statement of Probable Cause

5. Since on or about May 26, 2020, protesters have gathered in Portland, Oregon's public areas to protest. Three of these public areas are Lownsdale Square, Chapman Square and Terry Schrunk Plaza. The Portland Justice Center, housing Portland Police Bureau's (PPB) Central Precinct and the Multnomah County Detention Center (MCDC), border these parks, as does the Mark O. Hatfield United States Federal Courthouse[1]. The United States of America owns the entire city block (Block #24) occupied by the courthouse building depicted below:

MAP 1



Daily protests have regularly been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. The most violent of these incidents impacting federal property occurred on May 28, 2020, when Portland Field

---

[1] As part of my duties, I am familiar with the property boundaries for federal facilities in the Portland Oregon area. The federal government owns the entire city block occupied by the Mark O. Federal Courthouse. Easements have been granted for the sidewalks surrounding the facility. The property boundary extends past the sidewalks.

**Page 3 –Affidavit of SA Frank A. Pellegrini**       **USAO Version Rev. April 2018**

Office Immigration and Customs Enforcement (ICE) facility was targeted by a Molotov Cocktail. The Mark O. Hatfield Courthouse has experienced significant damage to the façade and building fixtures during the weeks following this incident. Additionally, mounted building security cameras and access control devices have been vandalized and/or stolen. The most recent repair estimate for the damage at the Mark O. Hatfield Courthouse is in excess of $50,000. Other federal properties in the area are routinely being vandalized to include the historic Pioneer Federal Courthouse, the Gus Solomon Courthouse, and the Edith Green Wendall Wyatt Federal Office Building. FPS law enforcement officers, U.S. Marshal Service Deputies and other federal law enforcement officers working in the protection of the Mark O. Hatfield Courthouse have been subjected to physical assaults, verbal threats, aerial fireworks including mortars, high intensity lasers targeting officer's eyes, thrown hard projectiles (rocks, glass bottles and metal food cans), thrown balloons filled with paint, thrown bodily waste and vulgar language from demonstrators while preforming their duties. On July 11, 2020, a protestor physically attacked a US Federal Officer, at the Mark O. Hatfield Courthouse, while carrying out his official duties. The protester struck the officer several times with a sledgehammer to the upper body and head.

6. On July 22, 2020, at approximately 12:26 a.m., violent opportunists threw two Molotov cocktails at the southern entrance and started a fire at the front entrance of the Hatfield building (Protective Security Officer witnessed via security camera). When Agents/Officers attempted to utilize a porthole to put the fire out, violent opportunist shined laser inside the porthole and tried to throw objects inside the courthouse.

7. On July 22, 2020, at approximately 12:30 a.m., at Chapman Park in the downtown Portland Oregon area (District of Oregon), Giovanni Terrance BONDURANT (date of birth: 12/1/2000) did forcibly assault the Agent Victim 1(AV-1), a federal officer, while said officer was engaged in the performance of his official duties in violation of Title 18, United States Code, Section 111(a)(2).[2] BONDURANT did forcibly assault the AV-1 while said officer was engaged in the performance of his official duties in violation of Title 18, United States Code, Section 111(a)(1).

8. AV-1 made a written statement which states the following:

> On July 22, 2020, I responded with my squad, BORTAC DELTA, to the corner of 3rd Street and Main Street to apprehend two rioters with shields who were throwing rocks and bottles at officers and agents. As my team and I walked through Chapman Square Park I could see the two rioters with shields, who had been throwing rocks and bottles, walking in my direction. They were approaching the northeast corner of the park near 3rd Street and Main Street. I announced myself as a U.S. Border Patrol Agent and told both rioters to stop and drop their shields. I approached one of the rioters wearing dark clothing, holding a black shield. I told him to put down the shield, and he refused, and tried to abscond. I grabbed the rioter's arm and began to remove his shield. At this time, I was struck and grabbed from behind by the other rioter. The other rioter was wearing dark clothing with a white backpack, and he was wearing a gas mask. This rioter pulled

---

[2] The identities of the Agent Victim and Agent Witnesses referenced herein are known to me, and I know them to be law enforcement officers for the purposes of 18 U.S.C. § 1114. I have withheld their names from this affidavit for their safety and security.

**Page 5 –Affidavit of SA Frank A. Pellegrini**           **USAO Version Rev. April 2018**

me to the ground and began striking my chest and head. I gained control of the rioter's hand and arm. I then restrained the rioter and applied flexible restraints to his hands. The rioter continued to try to fight while he was in restraints. At this time, Federal Protective Service arrived to assist me and my team and took possession of both of the rioters.

9. Agent Witness 1 (AW-1) made a written statement which states the following:

On July 22, 2020, I responded with my squad, BORTAC DELTA, to the corner of 3rd Street and Main Street to apprehend rioters that were assaulting agents and officers at the intersection of SW 3rd Avenue and Main Street.

As I approached the area from the south in Chapman Park, I observed several subjects throwing rocks, bottles, fireworks and other unknown objects at agents and officers. I focused my attention on two suspects that I observed throwing glass bottles and other unknown objects. Both suspects were retreating from assaulting agents. They attempted to move south away from agents and officers at the intersection of SW 3rd and Main, unbeknownst to them I was approaching from the flank with other Agents.

The first subject, Nicholas YARNELL, was running in my direction, I called out Police, Federal Agent and attempted to apprehend the subject. I grabbed a hold of his shield. The subject immediately began to flail and attempt to evade arrest. AV-1 then approached and called out to the subject again and announced U.S.

Border Patrol before grabbing the subject. As AV-1 wrestled with the subject, a second suspect that I also observed throwing objects at agents and officers, stopped his retreat, and returned in an attempt to tackle AV-1 in an attempt to free YARNELL.

The second subject, Giovanni BONDURANT, struck AV-1 from behind. BONDURANT then began to strike AV-1 in an effort to free YARNELL. I immediately focused my attention on BONDURANT as AW-2 grabbed a hold of YARNELL and placed him under arrest as AV-1 focused on BONDURANT and placed him under arrest. At that time, Federal Protective Services Officers arrived on the scene to take control of the suspects and place them under arrest and transported them to the Hatfield Courthouse for processing.

Both suspects were dressed in dark clothing, had shields and gas masks in their possession.

10. Agent Witness 2 (AW-2) made a written statement which states the following:

On July 22, 2020 I was assigned to BORTAC team Delta and responded to the corner of 3rd Street and Main Street in order to apprehend two rioters with shields who were throwing rocks and bottles at officers and agents. As we walked through Chapman Square Park, I turned around and observed AV-1 attempting to detain a subject who was actively resistant. I immediately moved to the AV-1's location and gained control of the subject AV-1 was attempting to detain. I

maintained control of the subject until Federal Protective Officers arrived and assisted. A Federal Protection Officers then took custody of the subject I detained.

11. On July 22, 2020, at approximately 5:30 a.m., I conducted an interview with FPS Inspector Tremaine MCMILLIAN. MCMILLIAN stated he was the first FPS Inspector to arrive and help the BORTAC officers. MCMILLIAN stated he observed two BORTAC officers on the ground struggling to handcuff a subject. MCMILLIAN stated the officers were able to handcuff the subject and transferred custody to FPS. MCMILLIAN stated he did not see what lead to the detainment.

12. On July 22, 2020, at approximately 6:00 a.m. I conducted an interview with BONDURANT. Below is a summary of the interview:

> I introduced himself as a Special Agent with the Federal Protective Service, began an audio recording and advised BONDURANT he would be recoding. I read BONDURANT his Miranda warning. I showed BONDURANT the FPS Miranda Waiver form and asked if BONDURANT wished to speak with him. BONDURANT appeared to read the form as I filled out his name. I asked if BONDURANT wished to speak with him. BONDURANT stated sure.
>
> I asked what happened. BONDURANT stated he was in the park with his friend Noah (known to me as Nicholas YARNELL). BONDURNAT stated some uniformed officers approached them, didn't speak to anyone and took them into custody. I asked where BONDURANT was in the park and used tiles on the wall to depict the Mark O. Hatfield Federal Courthouse and the Chapman Park.

**Page 8 –Affidavit of SA Frank A. Pellegrini**          **USAO Version Rev. April 2018**

BONDURANT showed I was in Chapman Park by physically pointing to the center of the tile I depicted as Chapman Park. I asked where the uniformed officers arrived. BONDURANT stated he didn't know. I referenced BONDURANT and his friend having homemade shields. BONDURANT stated they had picked up some shields from the ground and stated they did not make them.

I stated BONDURANT's friend had informed the two were throwing rocks. BONDURANT stated he didn't throw anything as he had his shield in his hand. BONDURANT then stated his friend was getting arrested and they had gotten split up. I asked what happened when BONDURANT's friend was getting arrested. BONDURANT stated, he went to go pick him up and help him, when he was tackled. I asked if BONDURANT came into contact with the officers when he was trying to help his friend. BONDURANT stated officers came into contact with him, adding he didn't contact the officers.

I re-stated how BONDURANT grabbed his friend and asked what had happened next. BONDURANT stated the officers then grabbed him and took his mask off. I asked if there was a struggle. BONDURANT stated, probably, because he was pissed as fuck because that they took his mask off. BONDURANT then clarified his answer with, most likely.

I asked BONDURANT to describe how the officers where dressed. BONDURANT stated the officers were dressed in desert camouflage. I asked if the BONDURANT exchanged strikes with the officer during his detainment. BONDURANT denied striking the officer stating he only tried to help his friend up.

I warned BONDURANT about lying and asked if he had exchanged strikes with the officer, or if the officer had struck him. BONDURANT stated, he didn't get hit or anything. I asked about when BONDURANT ran towards his friend to help him up, if it was possible that BONDURANT contacted the officer at that point. BONDURANT stated it was possible, but if it happened it wasn't intentional. BONDURANT explained he ran towards his friend with his shield in one hand, tried to help his friend get up and was then detained. I asked BONDURANT to clarify whether he was struck, or if he struck officers. BONDURANT stated it was possible that when he was picking his friend up, he could have ran into the officer. BONDURANT clarified even though there were about five officers involved, he still tried to pick his friend up, was able to touch his friend, but was unsuccessful at getting his friend to his feet.

SA MILLER asked BONDURANT what his shield looked like. BONDURANT stated the shield was a circular shield. SA MILLER asked if he was holding it with both hands. BONDURANT stated the shield was a one-handed shield. SA

MILLER asked what BONDURANT's purpose was when trying to help him. BONDURANT stated he was trying to help him up. I then ended the interview.

### Conclusion

13. Based on the foregoing, I have probable cause to believe, and I do believe, that Giovanni BONDURANT committed felony Assault on a Federal Officer, in violation of Title 18 U.S.C § 111 (a)(1). I therefore request the Court issue an arrest warrant and complaint for Giovanni BONDURANT.

14. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Paul Maloney. In his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*Sworn to by telephone*
*In accordance with Fed. R. Crim. P. 4.1*
Frank Pellegrini
Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means at 10:51 a.m./p.m. in accordance with Fed. R. Crim. P. 4.1 this 22nd day of July 2020.

HONORABLE JOHN V. ACOSTA
United States Magistrate Judge

**Page 11 –Affidavit of SA Frank A. Pellegrini**                                **USAO Version Rev. April 2018**